

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
10/28/2016

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **RAQUEL TRICIA KING,** | § | **Case No. 13-30301** |
| | § | |
| **Debtor.** | § | **Chapter 7** |
| | § | |

**MEMORANDUM OPINION REGARDING TRUSTEE JOSEPH M. HILL'S**
**APPLICATION FOR TRUSTEE COMPENSATION AND EXPENSES**
**[Doc. No. 164]**

## I.    INTRODUCTION

Chapter 7 trustees in this district have come to expect that their fee applications will be routinely approved without a hearing for the maximum amount allowed by 11 U.S.C. § 326(a).[1] The Court issues this Memorandum Opinion to alert the panel trustees that the undersigned judge will not summarily approve all fee applications upon submission. The conduct in the case at bar of Joseph M. Hill, the Chapter 7 trustee (the "Trustee"), illustrates the Court's reason for taking this approach.

This Court has already issued one memorandum opinion in this case—*In re King*, 546 B.R. 682 (Bankr. S.D. Tex. 2016) (the "First Opinion")—and it addressed the fee application of the law firm of Cage, Hill & Niehaus, L.L.P (the "Law Firm"). The Trustee is a name partner of the Law Firm, and he had obtained this Court's approval for the Law Firm to represent him in this case. In the First Opinion, the Court explained why it reduced the Law Firm's requested fees and expenses of $127,842.28 by $81,989.27 and only granted total fees and expenses of $45,853.01. The Court expressly found that the Trustee had violated his fiduciary duty to the estate "by allowing his firm to seek illegitimate fees from the estate." *Id.* at 685. The ruling from the First Opinion was not appealed.

1

In a footnote in the First Opinion, the Court set forth that given the Trustee's failure to properly monitor the Law Firm's billing, the Court would hold a hearing on his eventual application requesting his statutory trustee fee. *Id.* at 689 n.3. The footnote apprised the Trustee that this Court would not, as a matter of course, approve the maximum fee allowed by § 326(a).

Now pending before this Court is the Application for Trustee's Compensation and Expenses (the "Fee Application"). [Doc. No. 164]. The Court took this matter under advisement after holding a hearing on the Fee Application. The Trustee requests compensation of $28,461.93—which is the maximum allowed under § 326(a). For the reasons set forth herein, the Court denies the Trustee's request for the maximum amount of $28,461.93 and will award him only $5,692.39. In rendering this ruling, the Court makes the following Findings of Fact and Conclusions of Law under Bankruptcy Rules 7052 and 9014. To the extent that any Finding of Fact is construed to be a Conclusion of Law, it is adopted as such; and to the extent that any Conclusion of Law is construed to be a Finding of Fact, it is adopted as such. Further, this Court reserves the right to make additional findings and conclusions as it deems necessary. Additionally, for purposes of ruling on the Fee Application, the Court adopts the findings of fact and conclusions of law set forth in the First Opinion.[2] The specific findings of fact from the First Opinion that this Court cites herein are set forth in italics in **Appendix A**, attached hereto.

## II.   FINDINGS OF FACT

1.   On June 10, 2016, the Trustee filed the Fee Application, [Doc. No. 164]; no documentation was attached evidencing what specific services the Trustee provided, when he provided them, or how much time he spent providing them. Aside from seeking the maximum statutory fee available (i.e., $28,461.93), the Trustee also seeks reimbursement of expenses totaling $253.50, for a total amount of $28,715.43. [*Id.* at p.

2

2 of 3]. Neither the United States Trustee nor any creditor has objected to the Fee Application. [*See* Minute Entry for June 10, 2016].

2. On August 1, 2016, this Court entered an order setting a hearing on the Fee Application. [Doc. No. 167]. The Court emphasized the need for this hearing in the First Opinion:

> Given this Court's concerns about the Trustee's failure to property monitor his own law firm's billing in this case, the Court now puts the Trustee, as well as the U.S. Trustee, on notice that this Court will hold a hearing to determine whether the Trustee should receive the entire $30,000 [representing the amount that the Trustee estimated at that time would be the maximum amount allowed under § 362(a)]. Section 326(a) gives this Court the discretion to award less than the maximum amount.

[*Id.* at p. 1 of 2 (citing *King*, 546 B.R. at 689 n.3)]. The Court's order also encouraged the Trustee to "adduce testimony and introduce exhibits in support of the [Trustee's Fee] Application." [*Id.* at p. 2 of 2].

3. On August 30, 2016, the Court held a hearing on the Fee Application. The Trustee gave testimony, but introduced no exhibits.

4. The Trustee testified that in administering this case, he performed standard trustee tasks such as conducting the creditors' meeting and reviewing the Debtor's schedules and statements of affairs. [Hr'g held on Aug. 30, 2016, at 10:07:41–10:07:46 A.M.]. The Trustee also testified that he had a meeting with Eric Boutte ("Boutte")—the Debtor's ex-husband—and spent "about an hour with him interviewing and listening to his story." [*Id.* at 10:08:20–10:08:34 A.M.].

5. Because of the meeting with Boutte, the Trustee decided that he needed to hire the Law Firm to conduct further investigation regarding whether: (1) to object to the Debtor's discharge; (2) to object to the Debtor's exemptions; and (3) to recover and sell a ranch located in Flatonia, Texas. [*Id.* at 10:07:50–10:08:02; 10:09:06–10:09:09 A.M.].

3

6. During his testimony at the hearing on the Fee Application, the Trustee, in an effort to convince this Court to approve his fee request for the maximum amount under § 326(a), attempted to explain why he had not caught the infirmities in the Law Firm's fee application prior to supporting the fees requested by the Law Firm. The Trustee admitted that he "had fallen into the habit" of reviewing "the narrative of the [Law Firm's] fee application," but that he did not review "each individual time entry." [*Id.* at 10:14:37–10:14:48 A.M.]. The Trustee also admitted that he had actually delegated the review of the Law Firm's time entries to an associate at the Law Firm whose name is Tim Wentworth ("Wentworth"). [*Id.* at 10:14:54–10:15:09 A.M.]. Thus, the Court finds that the Trustee did not review the Law Firm's timesheets that were attached to the Law Firm's fee application.

7. Six unsecured creditors have filed proofs of claim in this case, none of which have been challenged. The names of these creditors, and the amounts that they claim, are as follows:

| Name | Amount |
| --- | --- |
| Harris County TRA | $1,271.50 |
| American InfoSource LP as agent for DirectTV,LLC | $704.09 |
| Apache Stone Quarry, LLC | $16,607.11 |
| Western Surety | $2,729,777.53 |
| Frost Arnett Agt for MD Aesthetic Surgery Ctr | $1,020.00 |
| Atascocita Timbers Homeowners' Association Corp | $1,421.40 |
| **TOTAL:** | **$2,750.801.64** |

[Claim Nos. 1, 2, 3, 4, 5 & 6].

### III.   CONCLUSIONS OF LAW

**A.   Jurisdiction, Venue, and Constitutional Authority to Enter a Final Order**

1.   <u>Jurisdiction</u>

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b).  Section 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 [the Code], or arising in or related to cases under title 11." District courts may, in turn, refer these proceedings to the bankruptcy judges for that district.  28 U.S.C. § 157(a).  In the Southern District of Texas, General Order 2012-6 (entitled General Order of Reference) automatically refers all eligible cases and proceedings to the bankruptcy courts.

The particular issue at bar constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) because it concerns the administration of this Chapter 7 estate.  Further, it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) because it involves the allowance or disallowance of claims against the estate—namely, the Trustee's claim for fees and expenses. Additionally, this matter is core pursuant to 28 U.SC § 157(b)(2)(O) because it involves the adjustment of the debtor-creditor relationship insofar as the fee and expense reimbursement request of the Trustee—a holder of a claim against the Debtor's estate—is being granted in part and denied in part.  Finally, this matter is core pursuant to the general "catch-all" language of 28 U.S.C. § 157(b)(2).  *See In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under 28 U.S.C. § 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."); *De Montaigu v. Ginther (In re Ginther Trusts)*, Adv. No. 06-3556, 2006 WL 3805670, at *19 (Bankr. S.D. Tex. Dec. 22, 2006) (holding that a matter may constitute a core proceeding under 28 U.S.C. § 157(b)(2) "even though the laundry list of core proceedings under § 157(b)(2) does

5

not specifically name this particular circumstance").

2.    <u>Venue</u>

Venue is proper under 28 U.S.C. § 1408(1) because the Debtor resided in the Southern District of Texas for 180 days prior to the filing of her Chapter 7 petition.

3.    <u>Constitutional Authority to Enter a Final Order on the Fee Application</u>

In the wake of the Supreme Court's issuance of *Stern v. Marshall*, 564 U.S. 462 (2011), this Court is required to determine whether it has the constitutional authority to enter a final order in any dispute pending before it. In *Stern*, which involved a core proceeding brought by the debtor under 28 U.S.C. § 157(b)(2)(C), the Supreme Court held that a bankruptcy court "lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." *Id.* at 503. As already noted above, the pending dispute before this Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (O). Because *Stern* is replete with language emphasizing that the ruling is limited to the one specific type of core proceeding involved in that dispute, this Court concludes that the limitation imposed by *Stern* does not prohibit this Court from entering a final order here. A core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O) is entirely different than a core proceeding under 28 U.S.C. § 157(b)(2)(C). *See, e.g., In re Davis*, 538 F. App'x 440, 443 (5th Cir. 2013) *cert. denied sub nom. Tanguy v. W.*, 134 S. Ct. 1002 (2014) ("[W]hile it is true that *Stern* invalidated 28 U.S.C. § 157(b)(2)(C) with respect to 'counterclaims by the estate against persons filing claims against the estate,' *Stern* expressly provides that its limited holding applies only in that 'one isolated respect' . . . We decline to extend *Stern*'s limited holding herein."); *see also Badami v. Sears (In re AFY, Inc.)*, 461 B.R. 541, 547–48 (B.A.P. 8th Cir. 2012) ("Unless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy

judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional.").

Alternatively, even if *Stern* applies to all of the categories of core proceedings brought under 28 U.S.C. § 157(b)(2), *see In re Renaissance Hosp. Grand Prairie Inc.*, 713 F.3d 285, 294 n.12 (5th Cir. 2013) ("*Stern*'s 'in one isolated respect' language may understate the totality of the encroachment upon the Judicial Branch posed by Section 157(b)(2) . . . ."), this Court still concludes that the limitation imposed by *Stern* does not prohibit this Court from entering a final order in the issue at bar. In *Stern*, the debtor filed a counterclaim based solely on state law; whereas, here, the claim brought by the Trustee is based solely on express provisions of the Bankruptcy Code (§§ 326; 330) and judicially-created bankruptcy law interpreting these provisions. This Court is therefore constitutionally authorized to enter a final order on the Fee Application. *See In re Airhart*, 473 B.R. 178, 181 (Bankr. S.D. Tex. 2012) (noting that the court has constitutional authority to enter a final order when the dispute is based upon an express provision of the Code and no state law is involved).

**B.     This Court has an Independent Duty to Evaluate All Fee Applications**

No party-in-interest has objected to the Fee Application. [Finding of Fact No. 1]. The absence of such an objection, however, does not mean that this Court should automatically approve the Trustee's request for the maximum amount allowed under § 326(a).[3] Rather, this Court has an independent duty to evaluate all fee applications, and in fulfilling this duty, this Court may reduce the requested amount. § 330(a)(2) ("The court *may, on its own motion* . . . award compensation that is less than the amount of compensation that is requested) (emphasis added); *Matter of Evangeline Refining Co.*, 890 F.2d 1312, 1326 (5th Cir. 1989) ("However, an application must be sufficiently detailed and accurate that, in conjunction with any proceeding in connection therewith and the record in the case, a court can make an independent evaluation as to what level of fees are actual, necessary and reasonable."); *In re WNS, Inc.*, 150 B.R. 663, 664

7

(Bankr. S.D. Tex. 1993) (holding that "the Court is not bound to award the fees sought, and it has the duty to independently examine the reasonableness of the fees").  Stated differently, merely because a Chapter 7 trustee requests the maximum amount allowed under § 326(a) does not mean he or she should receive it:  rubber-stamping will not do.[4]  Nor does § 330(a)(7)— which requires this Court to treat a Chapter 7 trustee's compensation as a commission— somehow confer an absolute right of a trustee to be paid the maximum amount allowed under § 326(a).  *Coyote*, 400 B.R. at 91–95; *In re Phillips*, 392 B.R. 378, 382–90 (Bankr. N.D. Ill. 2008).   Rather, a trustee requesting compensation bears the burden of proof to show this Court why his fee is "reasonable" as required by § 330(a)(1) and § 326(a), and in doing so, he "should submit evidence supporting the hours worked and rates claimed." *Evangeline*, 890 F.2d at 1326 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

In the case at bar, the Trustee requests a fee of $28,461.93.  This Court must therefore determine if this amount represents a level of fees that is reasonable.  §§ 330(a)(1)(A); 326(a); *Evangeline*, 890 F.2d at 1326.

**C.    Awarding the Maximum Compensation Allowed Under § 326(a) to the Trustee in the Case at Bar is Inequitable and Disproportional and Therefore is Not "Reasonable" Under Either § 330(a)(1) or § 326(a)**

Pre-BAPCPA,[5] courts were required to evaluate the factors set forth in § 330(a)(3) when determining whether to award a trustee the full amount of compensation sought.[6]  While the pre-BAPCPA version of § 330(a)(3) applied equally to both Chapter 7 and Chapter 11 trustees, the post-BAPCPA version limits mandatory evaluation of the enumerated factors to requests for compensation by an "examiner, trustee under chapter 11, or professional person." § 330(a)(3); *Coyote*, 400 B.R. at 91; *Phillips*, 392 B.R. at 382.  The express omission of Chapter 7 trustees from this list indicates congressional intent to alleviate bankruptcy courts of the burden of having

to undertake a § 330(a)(3) analysis in every single "asset" Chapter 7 case. *Coyote*, 400 B.R. at 94.[7]

Thus, under this current statutory scheme, courts may—and should—consider the surrounding facts and circumstances in determining what is reasonable compensation and whether to award less than the maximum amount allowed under § 326(a). *Id.* at 95; *Phillips*, 392 B.R. at 385 (holding that in the absence of clear and express statutory language, trustee compensation should not be afforded an *absolute* presumption of maximum compensation pursuant to § 326(a)). Such an inquiry may, but is not required to, include consideration of the § 330(a)(3) factors. *Coyote*, 400 B.R. at 95; *In re McKinney*, 374 B.R. 726, 730 (N.D. Ca. 2007).[8] Courts ought to first look for disproportionality or inequitableness, rather than simply mechanically applying the § 330(a)(3) factors in each case. *Coyote*, 400 B.R. at 95. Such a methodical application would undermine the intent of Congress when it acted to exclude compensation for Chapter 7 trustees from mandatory analysis under § 330(a)(3). *Id.* After focusing on disproportionality or inequitableness, if the court wants to consider any or all of the § 330(a)(3) factors, it has the discretion to do so.[9]

In the case at bar, for several reasons, the Court finds that it would be inequitable to award the Trustee the maximum amount of $28,461.93 that he requests. First, the Trustee violated his fiduciary duty to creditors of the estate by letting his own law firm seek fees well in excess of what he should have allowed. *King*, 546 B.R. at 685. Perhaps most galling, the Trustee abdicated his fundamental duty of reviewing the Law Firm's timesheets before allowing the Law Firm to seek approval of fees for the services rendered. [Finding of Fact No. 6]. Indeed, the Trustee admitted that he himself does not review the Law Firm's timesheets, but rather has delegated that duty to one of the Law Firm's associates (i.e., Wentworth). [*Id.*]. His failure to review these timesheets paved the way for the Law Firm to seek improper fees, which

in turn led the largest unsecured creditor (Western Surety) to object and this Court to substantially reduce the fee request. *King*, 546 B.R. at 685–86, 736–38.

Second, the Trustee violated Rule 9019 by unilaterally settling a portion of his objection to the Debtor's exemptions, *id.* at 733–34; he never filed an application to compromise pursuant to Rule 9019 to give this Court and the estate's creditors the opportunity to evaluate and object to this settlement, *id.* at 734. This violation is particularly egregious because he agreed to settle for an amount (i.e., $4,000.00) that was substantially less than the value that the Trustee's own appraiser believed the jewelry that the Debtor was attempting to exempt was worth (i.e., $24,885.00). *Id.* at 733–34. Third, he made two misrepresentations to this Court when he sought approval to retain the Law Firm—representations upon which this Court relied in granting the Trustee's request to employ the Law Firm. First, he stated the following in both the amended application to employ the Law Firm and the second amended application to employ the Law Firm: "The initial review and assessment of claims filed in the debtor['s] cases is routinely undertaken by the trustee or his paralegals and law clerks without incurring legal fees." *Id.* at 687; [Appx. A, Findings of Fact Nos. 4 & 6]. Yet, after this Court approved the Trustee's retention of the Law Firm, he allowed the Law Firm to bill time for reviewing claims. *King*, 546 B.R. at 732. The Court only became aware of this fact as a result of Western Surety's objection to the Law Firm's fee application and this Court's review of the Law Firm's timesheets. The Trustee himself never affirmatively disclosed this information to the Court, nor did he try to explain it at the hearing on the Fee Application.

The second misrepresentation that the Trustee made—in the original application to employ the Law Firm as well as the amended applications to employ—was this: "Trustee is a partner in the law firm and such fact will ensure employment of the [Law Firm] will be in the best interest of creditors in this estate. Trustee's presence ensures greater control and fee

monitoring as further described on Exhibit A." *Id.* at 736. Nothing could be further from the truth. In fact, the Trustee's presence ensured virtually no control and fee monitoring of the Law Firm. As already noted, the Trustee admitted at the hearing on the Fee Application that he never reviewed the Law Firm's time entries before the Law Firm filed its fee application, but rather had delegated that task to Wentworth, an associate at the Law Firm. [Finding of Fact No. 6]. Those un-reviewed timesheets were the subject of the hearing on the Law Firm's fee application, which led this Court to issue the First Opinion reducing the Law Firm's fee request from $123,282.25 to $42,140.75. *Id.*.

There is more. Not only did the Trustee disregard Rule 9019 during his administration of this case; he now disregards Rule 2016 in prosecuting his own Fee Application. Rule 2016(a) requires the following: "An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a *detailed statement* of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." (emphasis added). This rule is not limited to professionals, such as attorneys and accountants; it also encompasses trustees seeking compensation. *See Evangeline*, 890 F.2d at 1326; *Phillips*, 392 B.R. at 390. Thus, Rule 2016 applies to the Trustee in the case at bar.

In *Phillips*, the court found that the trustee's application was submitted in accordance with Rule 2016(a). 392 B.R. at 390. In that case, the trustee sought the maximum allowable amount under § 326(a), and in support of his request, he provided the court an exhibit summarizing the tasks that he had performed as trustee and the amount of time spent undertaking these tasks. *Id.* at 380–81. Ultimately, the *Phillips* court awarded the trustee less than the maximum amount under § 326(a) because, although the trustee did good work, the difficult tasks were performed by the trustee's attorneys with little involvement from the trustee; thus, the court

was not persuaded that the trustee deserved the maximum allowable amount. *Id.* at 392. But, at least the trustee in *Phillips* provided information to the court in support of his request for the maximum allowable fee.

Chapter 7 trustees in other districts have also provided similar documentation in support of their request for their statutory fee, *see e.g.*, *Coyote*, 400 B.R. at 89 ("The Trustee has provided 'backup' time and expense records to the court, showing that the combined time expended on the Coyote Ranch case by the Trustee and other professionals in his office was 461.7 hours . . . ."), and other courts believe that such documentation is required, *see, e.g.*, *McKinney*, 374 B.R. at 732 ("[I]t will continue to be necessary for trustees to present detailed fee applications, including a schedule of the number of hours spent, daily time records supporting the time spent and a narrative of the trustee's role and accomplishments supporting the compensation award."); *but see In re Mack Properties*, 381 B.R. 793, 799 (Bankr. M.D. Fla. 2007) ("The Court will not require trustees to maintain time records, but, as with all fee applications, a sufficient factual basis for the requested compensation must be provided.").

Here, the Fee Application provides no such information nor did the Trustee introduce any documentation into the record. [Finding of Fact No. 3]. Unlike the trustees in *Phillips* and *Coyote*, the Trustee in the case at bar has provided no detailed statements delineating the work he performed for the estate or how much time he spent performing these tasks. Under these circumstances, this Court could justifiably deny all compensation requested by the Trustee. *Evangeline*, 890 F.2d at 1327. However, rather than issuing a ruling that would create such a harsh result, the Court has taken it upon itself to review the Law Firm's timesheets introduced at the Law Firm's fee application hearing in order to try to determine the amount of time the Trustee spent administering this particular estate. After reviewing these timesheets, the Court finds that the Trustee spent, at most, 8.45 hours on various issues. [*See infra* Part III.D.1].

12

It is noteworthy that one of the other panel trustees in the Southern District of Texas—Rodney Tow ("Tow")—has filed applications, together with final reports (so-called TFRs) that include summaries of services that he has performed on behalf of the estate in his capacity as trustee. [*See, e.g.,* Case No. 14-36211, Doc. No. 74; Case No. 11-34294, Doc. No. 61; Case No. 11-36341, Doc. No. 114; Case No. 11-36343, Doc. Nos. 25 & 33; Case No. 12-35991, Doc. No. 141]. These summaries, which are attached hereto as **Appendix B**, reflect the services that Tow has provided as well as the date of these services.[10]   These notes provide a basis for demonstrating what activities Tow has undertaken in each case.   While these summaries or "notes" may not be as detailed as those in *Phillips*, or as detailed as the timesheets of an attorney, Tow at least has provided *something*; whereas here, the Trustee has tendered to this Court no documentation whatsoever regarding when he rendered services in his administration of the estate, what services he rendered, and how much time he spent rendering each of these services—despite Rule 2016's requirement that a "detailed statement" be provided.   Given Tow's documentation, the Trustee here cannot contend that all of the Southern District of Texas trustees have a long-standing practice of not providing any such information with their fee applications.   And, to the extent that such a practice has existed with some of the trustees, it needs to change now.   Compliance with Rule 2016 is mandatory, as the word "shall" means "must;" neither the Trustee here nor any other trustee has the right to opt out of this requirement.[11]

There is a further issue to consider in assessing whether granting the Trustee's fee request of $28,461.93 would be inequitable or disproportional.   The Fifth Circuit has stated that one of the twin pillars of the bankruptcy system is "satisfaction of valid claims against the estate."   *Fin. Sec. Assur. v. T–H New Orleans Ltd. P'ship (In re T–H New Orleans Ltd. P'ship)*, 188 B.R. 799, 807 (E.D. La.1995) *aff'd Fin. Sec. Assur. v. T–H New Orleans Ltd. P'ship (In re T–H New*

*Orleans Ltd. P'ship)*, 116 F.3d 790 (5th Cir. 1997). Here, the Trustee's failure to review the Law Firm's timesheets for improper billing, his failure to comply with Rule 9019, his misrepresentations to the Court that the estate would incur no attorneys' fees for reviewing claims and that there would be greater control in fee monitoring of the Law Firm, his unequivocal and blind support of the Law Firm's fee application despite its many infirmities, and his request for the maximum statutory amount in his own Fee Application underscore that the Trustee has forgotten about this particular pillar of the system. If the Trustee had his way, this Court would have approved the Law Firm's fee application in its entirety and his own Fee Application in its entirety. Had the Court done so, the Law Firm and the Trustee would have received the aggregate amount of $156,557.71 (i.e., $127,842.28 plus $28,715.43), and the unsecured creditors would have received only $20,114.87—leaving the former with 88.61% and the unsecureds with 11.39% of the total proceeds on hand in the estate.

This scenario would stink in the nostrils of the unsecured creditor body. These creditors, who hold over $2.7 million of debt in the aggregate, [Finding of Fact No. 7], could legitimately question the integrity of a bankruptcy system that allows a trustee and his own law firm to abuse the estate, yet garner the lion's share of estate proceeds, leaving them with a few crumbs.[12] This Court's refusal to grant all of the fees and expenses requested by the Law Firm and the Trustee will allow a greater distribution of estate proceeds to unsecured creditors and will not only achieve, to a much greater extent, one of the key objectives of the bankruptcy system, but will also result in a distribution that prevents the appearance of impropriety.

In sum, there have been numerous glaring problems with both the Trustee's administration of this case and his prosecution of the Fee Application, and these circumstances make it inequitable to award the Trustee the maximum amount that he requests. Accordingly, this Court finds that it should not award the entire fee of $28,461.93 that the Trustee requests.

14

The question therefore becomes how much should he receive? Should the reduction from his fee request be slight, moderate, or significant? The Court finds that it should look to some of the § 330(a)(3) factors to make this determination.[13]

**D.    Application of Certain Factors Set Forth in § 330(a)(3) Leads this Court to Find that the Trustee Should Receive Substantially Less than the Statutory Maximum Amount that He Requests**

There are six § 330(a)(3) factors. In the case at bar, the Court, exercising its discretion, chooses to focus on three of these factors: (1) the time spent by the Trustee providing services related to the administration of the estate; (2) the effective hourly rate for these services given the fee of $28,461.93 requested by the Trustee in the Fee Application; and (3) the Trustee's board-certification, skill, and experience in the bankruptcy field.

        1.    <u>Factors 1 and 2: Time Spent by the Trustee Administering the Debtor's Case and the Effective Hourly Rate Charged for Those Services</u>

The *Phillips* court was faced with a trustee's request for the statutory maximum compensation. 392 B.R. at 381. In his fee application, the trustee itemized the work that he had performed—for example, ten hours spent negotiating a sale and fifteen hours involving litigation. *Id.* In total, the trustee represented that he had completed 38 hours of work. The court then divided the trustee's requested fee of $40,325.94 by 38, and found that this amount "computes to over $1,000.00 per hour." *Id.* The court ultimately awarded $33,410.74, which resulted in an effective rate of $835.26 per hour. *Id.* at 391. While this was a sizable hourly fee, the *Phillips* court did, after all, find that the trustee's work was "very good." *Id.* at 392. Awarding the trustee a fee corresponding to this effective hourly rate was consistent with the dual requirements that § 330(a) imposes upon bankruptcy courts: namely, to ensure that the compensation is "reasonable" but also to "treat such compensation as a commission, based on section 326." §§ 330(a)(1)(A), (a)(7).[14] This Court believes it is appropriate to do a similar analysis in the case at bar.

15

First, unlike the trustee in *Phillips*, the Trustee in this case did *not* provide this Court with an itemized list of tasks performed and approximate time spent on each service. Thus, in order to find a denominator to use for this calculation—i.e., the number of hours spent by the Trustee administering this case—the Court has chosen to analyze the timesheets already submitted with the Law Firm's fee application. [*See* Doc. No. 133-4, Ex. C]. In reviewing these timesheets, the Court has found seventeen time entries by attorneys at the Law Firm that reflect communications with either "J. Hill" or "JMH"—both abbreviations for Joseph M. Hill, i.e., the Trustee. [*Id.* at p. 1 of 11]. Of these seventeen time entries, which are set forth in **Appendix C**, five of them are considered "lumped."[15] The Trustee himself did not bill any of this time in his capacity as a lawyer of the Law Firm, so this Court finds that the time that he spent communicating with the Law Firm's attorneys relates to the services he rendered in administering the estate.

The non-lumped time entries amount to a total of 3.45 hours, and the lumped entries show a total of 5.00 hours. Combined, the timesheets evidence that the Trustee spent, at most, 8.45 hours working on this case as a trustee. The Trustee also testified that he spent approximately one hour with Boutte, [Finding of Fact No. 4], which brings the Trustee's total time spent on the case, at most, to 9.45 hours. When one divides the Trustee's requested fee of $28,461.93 by 9.45 hours, the result is $3,011.85 per hour.

Some of the highest paid attorneys in Houston charge $1,125.00 to $1,445.00 per hour. *See Billing Rates Across the Country*, THE NAT'L LAW JOURNAL (Jan. 13, 2014), http://www.nationallawjournal.com/id=1202636785489/Billing-Rates-Across-the-Country?Slreturn=20160814173006 (stating that the highest partner hourly rate in Houston is $1,125.00 at the former firm, Bracewell & Giuliani); [*see In re Midstates Petroleum Co., Inc.*, Case No. 16-32237, Doc. No. 184, p. 7 of 14 (representing that at Kirkland & Ellis LLP, the firm's partners charge between $875.00–$1,445.00 per hour)]; [*see In re Houston Regional*

16

*Sports Network, L.P.*, Case No. 13-35998, Doc. No. 299, p. 4 of 29 (representing that at Haynes
& Boone, one of the senior partners charges $810.00 per hour and another partner charges
$630.00 per hour)]; [*see In re Atinum MidCon I, LLC*, Case No. 16-33645, Doc. No. 13, p. 6 of 8
(representing that at Andrews & Kurth, the highest rate for a partner is $1,300.00 per hour, and
the rates of two of the partners providing services in this particular case are $730.00 and $895.00
per hour, respectively)].   Given the many shortcomings of the Trustee's administration of this
case, it would be both unreasonable and disproportional to allow the Trustee to receive more than
double the highest paid hourly rate for an attorney providing legal services in Houston.  To make
such an award would violate the Code's requirement that this Court only approve a fee that is
"reasonable."  *See* §§ 330(a)(1), (a)(7); 326(a).  Thus, application of factors 1 and 2 justifies a
substantial reduction in the amount of the fee requested by the Trustee is warranted.

   2.   Factor 3: Board-Certification, Skill, and Experience in the Bankruptcy Field

   This factor considers the skill and experience of the individual requesting compensation,
including whether he is board-certified.  § 330(a)(3)(E).  In the present case, the Trustee has been
practicing law in the State of Texas since 1976; has been serving as a bankruptcy trustee since
1976; has administered thousands of Chapter 7 cases; is board-certified in business bankruptcy
law; and is often hired by other lawyers to handle complex bankruptcy matters.  [Appx. A,
Finding of Fact No. 2].  Yet, despite his qualifications, he has fallen woefully short in several
respects in the case at bar.

   As noted previously herein, the Trustee failed to supervise the Law Firm and, instead,
allowed the Law Firm to improperly bill the estate.  *King*, 546 B.R. at 689 n.3.  He also violated
Rule 9019 by settling a portion of his objection to the Debtor's exemption without seeking court
approval.  *Id.* at 733–34.[16]  His unilateral, undisclosed compromise deprived this Court and the
creditors of the opportunity to examine just why the Trustee was willing to settle for a $4,000.00

payment from the Debtor when the jewelry she was attempting to exempt had a fair market value of $24,885.00 according to the Trustee's own appraiser. *Id.* at 734. He also made a misrepresentation to this Court when he sought approval to retain the Law Firm: he assured the Court that he or his paralegals would conduct the initial review and assessment of claims without charging legal fees, and yet he let the Law Firm undertake these tasks and charged fees for doing so. *Id.* at 732; [Appx. A, Findings of Fact Nos. 4 & 6]. Finally, the Trustee represented that if this Court approved the Trustee's retention of the Law Firm as his counsel, there would be "greater control and fee monitoring;" yet, in fact, he did a woeful job of monitoring the Law Firm's fees. *King*, 546 B.R. at 736–37. No trustee who has administered thousands of Chapter 7 cases should be disregarding fundamental bankruptcy rules, making misrepresentations to the court, and allowing his law firm that represents him to charge the estate for services that are non-legal in nature or that the trustee himself should perform. *Id.* at 737–38.

Even if the Trustee was not board-certified, his poor performance would merit a reduction in the amount of the fee that he requests, as he has extensive experience practicing law and serving as a trustee. But, because he is board-certified, he is held to an even higher standard. *See Ritchey*, 512 B.R. 847, 872 (Bankr. S.D. Tex. 2014) (holding a bankruptcy professional to a higher standard due to professional's board certification); *In re Cochener*, 360 B.R. 542, 574–75 (Bankr. S.D. Tex. 2007) (same). Thus, his shortcomings here warrant a substantial reduction in the amount of the fee he should receive.

### E.    By Using a "Grading Scale," Reasonable Compensation for the Trustee is $5,692.39

As already noted, this Court is required, by statute, to only award fees that the Court finds are reasonable. §§ 326(a); 330(a)(1)(A). Reasonable compensation for Chapter 7 trustees has been defined differently by various courts.[17] This Court is keenly aware that it should not arbitrarily assign a fee here; doing so would violate the Fifth Circuit's directive not to pick "a

number out of mid-air." *See Evangeline*, 890 F.2d at 1328 (vacating the bankruptcy court's fee award and remanding because "[w]e are wholly unable to make an assessment of the proprietary of a fee award based on a number alone, devoid of any explanation of the method for its derivation."). This Court adopts the "grading" approach used by the *Phillips* court to determine a fee that is reasonable under the circumstances. 392 B.R. at 391–92.

The starting point is § 326(a). The maximum fee that can be awarded is determined by a three-tier formula set forth in this section. In the case at bar, the Trustee requests a fee of $28,461.93, which is the maximum allowed by § 326(a), as shown below:

| | |
|---|---|
| First Tier: 25% of the first $5,000.00 disbursed by the Trustee: | $1,250.00 |
| Second Tier: 10% of the next $45,000.00 disbursed by the Trustee: | $4,500.00 |
| Third Tier: 5% of the remaining funds disbursed by the Trustee (which, in this case, is $454,238.57): | $22,711.93 |
| **Total** | **$28,461.93** |

In *Phillips*, to arrive at a reasonable fee for the trustee, the court "graded" the trustee's work and likened its determination of "reasonable compensation" to the method of grading done by teachers in school. 392 B.R. at 391–92. For example, the court in *Phillips* only awards a full 5% on the third tier when the work is excellent—worthy of an "A" grade—then awards 4% for work deserving of a "B," and so on and so forth. *Id.* at 392. This Court now applies a similar grading system but expands it by applying it to all of the tiers, as shown below:

(1) 1st Tier:  A+(25%);  A(20%);  B(15%);  C(10%);  D(5%);  F(0%)

(2) 2nd Tier:  A+(10%);  A(8%);  B(6%);  C(4%);  D(2%);  F(0%)

(3) 3rd Tier:  A+(5%);  A(4%);  B(3%);  C(2%);  D(1%);  F(0%)

In this case, the starting point is to recognize that the Trustee is the administrator of an estate that has accumulated $191,000.00 of non-exempt, unencumbered funds. [Appx. A, Finding of Fact No. 8]. While the Trustee has played a relatively small role in recovering these funds—at most, he worked 9.45 hours while the Law Firm (rightly or wrongly) did virtually all of the work—he nevertheless should receive some credit for this result. Because most Chapter 7 cases do not produce this amount of non-exempt, unencumbered funds, the Court assigns an "A+" to the Trustee for this result. If the analysis stopped here, the Court would award the Trustee the the maximum amount allowed under § 326(a): $28,461.93.

But, this result cannot be viewed in a vacuum. The Trustee's conduct in administering the estate must be considered when grading him. In the first instance, the Trustee failed to fulfill his fiduciary duties to the estate—most notably, by allowing the Law Firm to improperly bill the estate. *King*, 546 B.R. at 737. He also violated Rule 9019, *id.* at 733–34, made misrepresentations to this Court in his application to employ the Law Firm, *id.* at 732, and failed to comply with Rule 2016 in conjunction with his own Fee Application. Those deserving of the highest percentage would not have succumbed to these pitfalls. In *Phillips*, the trustee was awarded 4% and 3.5%, respectively, in each of his cases because the work was good, but did not require much litigation or effort. 392 B.R. at 391–92. However, nowhere in that case did the court find that the trustee committed breaches of fiduciary duties, violated fundamental bankruptcy rules, or made misrepresentations to the court. Moreover, the *Phillips* court stated that the percentage should be "lower still where the services and results are merely good or average . . . ." *Id.* at 391.

Taking all of the Trustee's actions into consideration, the Court finds that the Trustee's efforts were below "merely good or average" for a trustee of his caliber and experience; indeed, because the Trustee is board-certified, he is held to a higher standard, which means that his

20

efforts here are well below being "merely good or average."  While this Court starts by giving the Trustee an A+ for serving as trustee over an estate that has accumulated $191,000.00 of non-exempt, unencumbered funds, his violation of his fiduciary duty lowers his grade to an "A;" his violation of Rule 9019 reduces his grade to a "B;" his misrepresentations to the Court brings his grade down to a "C;" and his failure to comply with Rule 2016 lowers his grade to a "D." Just like children in school who are lazy, cheat, rely on others to do their work, and are caught in the act, the Trustee here deserves a "D," i.e., 5% for the first tier, 2% for the second tier, and 1% for the third tier.  These deductions result in a total fee of $5,692.39, as shown below:

| | |
|---|---|
| First Tier: 5% of the first $5,000.00 disbursed by the Trustee: | $250.00 |
| Second Tier: 2% of the next $45,000.00 disbursed by the Trustee: | $900.00 |
| Third Tier: 1% of the remaining funds disbursed by the Trustee (which, in this case, is $454,238.57): | $4,542.39 |
| **Total:** | **$5,692.39** |

As stated earlier in this Memorandum Opinion, the Court finds that the Trustee has spent, at most, 9.45 hours administering this case, which brings his requested fee of $28,461.93 to an absurdly high hourly billing rate of $3,011.85 per hour.  *See supra* Part IV.E.1(b).  Based upon this Court's grading of the Trustee's work, the Trustee's compensation is $5,692.39—which, when divided by 9.45 hours, results in an hourly rate of $602.37.  This figure is still a very generous hourly rate given the Trustee's subpar administration of the estate in violation of fundamental rules; nevertheless he did play a role in generating $191,000.00 for the estate, [Appx. A, Finding of Fact No. 8], so he deserves some measure of compensation.  While the hourly rate of $602.37 is certainly much higher than his hourly rate of $450.00 as an attorney, [*see* Doc. No. 133-3, p. 1 of 1]—leaving room for an argument that the Trustee's fee ought to be

reduced even further—this Court finds that the $602.37 figure is an appropriate hourly rate that is consistent with this Court's duty to treat the Trustee's fee as a "commission" but also to ensure that the "commission" is reasonable.  Under all of these circumstances, the Court finds that the fee of $5,692.39 is reasonable.

**F.    The Trustee's Request for Reimbursement of Expenses is Granted in Part and Denied in Part**

The Trustee provided no documentation in support of his requested fees.  He did, however, attach some documentation to the Fee Application in support of his request for reimbursement of expenses.  The Court has reviewed this documentation, and finds that the Trustee's request for reimbursement for postage and photocopies (totaling in the aggregate $111.88) is reasonable and therefore approved.  However, the request for reimbursement of paralegal time totaling $141.62 is not approved.  This is because the Trustee attached no documentation to the Fee Application describing the services rendered by any paralegal nor did he introduce evidence about these services at the hearing on the Fee Application.  *In re Rachel Lee*, No. 13-37783, 2015 WL 1198690, at *7 (Bankr. S.D. Tex. Mar. 11, 2015) ("Likewise, the chapter 7 trustee adduced no evidence about these entries.  These entries total $52.34.  While the services represented by these entries may very well be compensable, the Court is compelled to disallow compensation for these entries due to the incomplete descriptions and the lack of evidentiary support.").

## IV.    CONCLUSION

In the First Opinion, this Court warned the Trustee that it had concerns about his administration of this case and that it would carefully scrutinize his request for his own fees and expenses.  *King*, 546 B.R. at 689 n.3, n.30.  Despite this warning, the Trustee proceeded to request this Court to award him the statutory maximum amount and then put on a case-in-chief

22

that does not come within hailing distance of satisfying his burden to receive this sum. He introduced no detailed statements required by Rule 2016 and gave scant testimony about what services he provided to the estate, when he provided these services, and how much time he spent providing these services. Indeed, the Trustee actually tried—at least to some degree—to blame his associate attorneys for his own shortcomings. [Hr'g on Aug. 30, 2016, at 10:14:21–10:16:50 A.M.]. This approach will not work. The Trustee is the captain of his ship; he, and he alone, is responsible for the unsatisfactory conduct in this case and, as such, must be held accountable now that his fee is being determined. *Lee*, 2015 WL 1198690, at *6 ("[T]he chapter 7 trustee stands as a beacon in the storm, responsible for all with few or no available resources.").

This Court has a responsibility to ensure that the Trustee's fee is reasonable. §§ 326(a); 330(a)(1)(A). The Court's determination of "reasonableness" takes into account the Trustee's abdication of his responsibilities, his violation of the Rules, the misrepresentation that he made to this Court in the application to employ the Law Firm, and the lack of an evidentiary record made at the hearing on the Fee Application. Under these circumstances, the Court declines to approve the fee request of $28,461.93, and instead approves only $5,692.39; and declines to approve the expense reimbursement request of $253.50, and instead approves only $111.88. Thus, the Court denies the Fee Application in part to the extent of $22,911.16, and approves the Fee Application in part to the extent of $5,804.27. The $22,911.16 will be distributed not to the Trustee, but to those stakeholders to whom the Trustee owes a fiduciary duty: the unsecured creditors.

The chart set forth below paints an accurate portrayal of the unjust results that would have happened if this Court had approved both the Fee Application and the Law Firm's fee application in their entirety and the more equitable result that will in fact happen by virtue of this Court's denial, in part, of both the Fee Application and the Law Firm's fee application:[18]



This chart illustrates that if this Court had approved the Fee Application and the Law Firm's fee application in their entirety, the Law Firm and its name partner (i.e., the Trustee) would have received an aggregate amount of $156,557.71 and the unsecured creditors would have received $20,114.87—leaving the former with 88.61% and the latter with 11.39% of the estate's total proceeds on hand. With this Court's decision to reduce the Law Firm's fee request and the Trustee's fee request, the unsecureds will actually receive $125,015.30, representing approximately 70.76% of the estate's total proceeds on hand, with the Law Firm and the Trustee receiving a total of $51,651.28, or 29.24% of total proceeds. This result is equitable, particularly given the Trustee's failure to meet his burden to demonstrate that his requested fee of $28,461.93 is reasonable—a burden made difficult to satisfy given his less than stellar administration of the estate (most notably his failure to monitor his own Law Firm), his violation of the rules, and his misrepresentations to the Court.

The message should now be clear: This Court will not automatically award any Chapter 7 trustee the maximum amount allowed by § 326(a), and this is so even if no objections to the fee application are lodged. If the Court, after reviewing a trustee's fee application, chooses not to

24

approve the fee request in chambers, but rather sets a hearing, then the trustee must earn his fee the old fashioned way:  Prove it.

The United States Trustee is directed to distribute this Memorandum Opinion to all panel trustees in the Southern District of Texas.

An order consistent with this Memorandum Opinion will be simultaneously entered on the docket.

Signed on this 28th day of October, 2016.

Jeff Bohm
United States Bankruptcy Judge

---

[1] Any reference to "the Code" refers to the United States Bankruptcy Code, and reference to any section (i.e., §) refers to a section in 11 U.S.C., which is the United States Bankruptcy Code, unless otherwise noted. Further, any reference to a "Rule" is a reference to the Federal Rules of Bankruptcy Procedure.

[2] *See Matter of Dowell*, 95 B.R. 690, 692–93 (Bankr. W.D. Mo. 1989) ("[I]t is now appropriate for this court to adopt and incorporate herein all the findings of fact and conclusions of law made in the court's former decision."); *see also In re Flintkote Co.*, Case No. 04-11300, 2015 WL 4762580, at *5 (Bankr. D. Del. Aug. 12, 2015) ("The Bankruptcy Court has also considered the findings and conclusions made in the Prior Confirmation Opinion and Prior Confirmation Order and concludes that the Plan Proponents have met their burden as found and determined herein.").

[3] *See, e.g., In re JLLCM, Inc.*, No. 04-83164-BJH-11, 2006 WL 6508475 at *4 (Bankr. N.D. Tex. July 20, 2006) ("[W]hile the Trustee can be compensated up to the statutory cap of section 326(a) for her services, this is a ceiling, not a floor . . . As such, the Court can award less compensation that that requested by the Trustee.") (citing *Pritchard v. Trustee (In re England)*, 153 F.3d 232, 234–35 (5th Cir. 1998)); *see also In re Coyote Ranch Contractors, LLC*, 400 B.R. 84, 95 (Bankr. N.D. Tex. 2009) ("[W]ithout a doubt, [courts] have discretion to award chapter 7 trustees something less than what is generally requested/expected in a Chapter 7 case (i.e., less than the Section 326 commission structure). In such a situation, the court can and should consider all surrounding facts and circumstances in deciding whether to award something less than the Section 326 commission.").

[4] "While in practice trustees are generally awarded the maximum fee, allowances are subject to the discretion of the court." *In re Schautz*, 390 F.2d 797, 800–01 (2nd Cir. 1968) (internal citation omitted). There is ample case law discussing why courts have reduced the statutory maximum compensation requested by the trustee under § 326(a). *See, e.g., In re B&B Autotransfusion Services, Inc.*, 443 B.R. 543, 554 (Bankr. D. Idaho 2011); *In re Greenberg*, Nos. CC-06-1034-PaLB, 03-16028, 2006 WL 6810945, at *1 (9th Cir. Bankr. App. Oct. 24, 2006).

[5] BAPCPA is the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (Pub. L. 109–8, 119 Stat. 23, enacted April 20, 2005). This Act amended the Code in several respects. There are two amendments made by BAPCPA that are germane to the issue at bar. First, BAPCPA added a new provision—i.e., § 330(a)(7)—which sets forth that: "In determining the amount of reasonable compensation to be awarded to a trustee, the court shall treat such compensation as a commission, based on Section 326." Second, § 330(a)(3) was amended so that bankruptcy courts are no longer required to apply the factors set forth in this provision when making a determination of the amount of a fee to award a Chapter 7 trustee.

[6] Specifically, pre-BAPCPA, § 330(a)(3) provided that: "In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all the relevant factors, including (A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration, or beneficial at the time at which the service was rendered toward the completion of, a case under this title; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue or task addressed; and (E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title."

[7] As noted by the court in *Coyote*, such a deliberate omission makes sense from a policy standpoint: "There are hundreds-times more chapter 7 cases in the bankruptcy system than chapter 11 cases where chapter 11 trustees have been appointed. It certainly could create an administrative burden for courts and trustees if a 'reasonableness' inquiry were required in every single 'asset' chapter 7 case." 400 B.R. at 95 n.12.

[8] The *Phillips* court has concluded that because BAPCPA no longer requires mandatory application of the § 330(a)(3) factors to a Chapter 7 trustee's fee request, courts are now barred from using any of the § 330(a) factors in determining the amount of the fee to be awarded. 392 B.R. at 385–86. This Court disagrees, and joins those courts—for example, *Coyote Ranch*, 400 B.R. at 95, and *McKinney*, 374 B.R. at 730—holding that a court, although no longer required to apply the § 330(a) factors, may nevertheless, in its discretion, consider any or all of these factors.

[9] The Court notes that the Fourth Circuit has held that post-BAPCPA, a Chapter 7 trustee must receive the maximum amount allowed by § 326(a) "absent extraordinary circumstances." *In re Rowe*, 750 F.3d 392, 397 (4th Cir. 2014). Stated differently, the Fourth Circuit has held that the maximum amount is "presumptively reasonable" and cannot be reduced absent extraordinary circumstances. *Id.* at 399. This holding conflicts with existing Fifth Circuit precedent—established pre-BAPCPA—that imposes the burden on a Chapter 7 trustee to prove up his statutory fee by requiring him to "submit evidence supporting the hours worked and rates claimed." *Evangeline*, 890 F.2d at 1326 (quoting *Hensley*, 461 U.S. at 433). Because the undersigned judge is bound by Fifth Circuit precedent, this Court will not apply *Rowe*'s holding in the case at bar. Even assuming, however, that the Fifth Circuit were to adopt the holding in *Rowe*, this Court finds: (a) that "extraordinary circumstances" exist here (for the reasons discussed herein); (b) it is the Trustee's burden to introduce evidence to prove that despite such extraordinary circumstances, this Court should still award him the fee that he requests; and (c) the Trustee has failed to meet this burden.

[10] The Court has not attached all of Tow's summaries, as they are voluminous. Rather, the Court has attached a few pages of his summaries in order to provide the reader of this Memorandum Opinion with an example of documentation that at least attempts to comply with Rule 2016(a). Additionally, Tow, when his law firm has represented a Chapter 7 estate, has also attached timesheets in support of his firm's fee request, and these timesheets show entries of Tow performing services in his capacity as a trustee (as opposed to a lawyer), with Tow entering the phrase "NO CHARGE" next to a description of the services that he is rendering. [Case No. 09-32467, Doc. No. 596-2, p. 1 of 26]. **Appendix B** also includes an example of such recordkeeping. These documents underscore that the Trustee in the case at bar—or any trustee—can keep records just like Tow to demonstrate what services he, as a trustee, has rendered and when he performed them.

[11] Granted, a trustee's failure to provide any records documenting what services he has rendered and how much time he has spent does not *per se* result in a *complete* denial of fees. *Evangeline*, 890 F.2d at 1327. However, the absence of such records certainly increases the risk that the trustee will be unable to meet his burden of proof in establishing that the level of the fee that he requests is reasonable. *Id.*

[12] In *Evangeline*, the Fifth Circuit directed that where the trustee himself, or his law firm, also serves as the counsel for the estate, the bankruptcy court must pay special attention to ensure that excessive compensation is not awarded. 890 F.2d at 1327. The Trustee failed to give much, if any, consideration to this directive when putting on his case-in-chief at the hearing on the Fee Application.

[13] *See supra* note 8.

[14] Because BAPCPA no longer requires courts to evaluate Chapter 7 trustee fee requests using the § 330(a)(3) factors, but instead requires that courts treat Chapter 7 trustee compensation as a commission based on § 326, much ink has been spilled over whether a Chapter 7 trustee's fee request should be determined differently than it was determined prior to the passage of BAPCPA. Some Chapter 7 trustees have argued that the changes made by BAPCPA mean that they are absolutely entitled—with no questions asked—to the maximum amount allowed by § 326(a). *See Phillips*, 392 B.R. at 380. No court has accepted such an argument. However, some courts—most notably the Fourth Circuit—have held that there is now a rebuttable presumption that a Chapter 7 trustee is entitled to the maximum amount, and that a lesser amount is appropriate only when "extraordinary circumstances" exist. *Rowe*, 750 F.3d at 397. Most courts have held that the approach for determining the fee is not materially different from the approach that was taken prior to BAPCPA's passage. *B&B*, 443 B.R. at 549–53; *Coyote*, 400 B.R. at 92–95; *McKinney*, 374 B.R. at 728–32. These courts, with which this Court agrees, have held that the major difference is that a strict application of the § 330(a)(3) factors can no longer be done, but rather that the courts should make a determination based upon the totality of the circumstances, with one eye always cocked on whether it would be inequitable or disproportional to award the maximum amount allowed under § 326(a). The fee awarded by the *Phillips* court, where the trustee did "very good" work, although representing a very high effective hourly rate of $835.26, is an appropriate harmonization of the statutory directive to treat the fee as a commission but also ensure that the fee is "reasonable."

[15] The lumped entries are denoted with an asterisk (*). An entry is considered to be lumped when a time entry combines services without showing a separate time for each entry; however, "tasks performed in a project which total a *de minimis* amount of time can be combined or lumped together if they do not exceed .5 hours on a daily

aggregate." U.S. DEP'T OF JUSTICE, Guidelines for Reviewing Applications for Compensation (Fee Guidelines), JUSTICE.GOV (Feb. 24, 2016 10:39 AM), http://www.justice.gov/ust/fee-guidelines.  Thus, for example, on the May 12, 2014 entry that TLW (i.e., associate attorney Tim Wentworth) entered, the total time of the 0.70 encompasses three discrete tasks, only one of which is Wentworth's conference with the Trustee. Because of this lumping, the Court cannot determine how much of the 0.70 hours Wentworth actually spent conferring with the Trustee. For purposes of the Court's ruling on the Fee Application, the Court will allocate the entire 0.70 hours—which means that the Court is liberally construing how much time the Trustee spent administering the estate.

[16] The Trustee cannot take the position that it was the Law Firm, not him, that violated Rule 9019. The Law Firm, as the firm representing the Trustee, is the agent of the Trustee, and the Law Firm's actions, or inactions, are imputed to the Trustee. *Pioneer v. Brunswick*, 507 U.S. 380, 397 (1993) ("This principle also underlies our decision in *United States v. Boyle* that a client could be penalized for counsel's tardy filing of a tax return. This principle applies with equal force here and requires that respondents be held accountable for the acts and omissions of their chosen counsel.") (internal citation omitted).

[17] One court focused on the 5% awarded to trustees for amounts ranging from $50,000.00 to $1,000,000.00 that is set forth in § 326(a), and reduced that 5% pursuant to a grading scale. *Phillips*, 392 B.R. at 392.  Another court reduced the requested statutory maximum fees to what the court believed was a reasonable fee when the amount requested was disproportionate to the services rendered. *B&B*, 443 B.R. at 554.  Still another court, unwilling to approve the statutory maximum amount of $39,893.75 allowed under § 326(a), reduced the requested fee to $15,000.00 based upon what the court believed to be a reasonable fee. *Mack Properties*, 381 B.R. at 799–800.

[18] Set forth below are the calculations associated with the column entitled "Law Firm:"

- The white column equals $127,842.28.  This number is derived from adding the fees that the Law Firm requested ($123,282.25) plus the expenses requested ($4,560.03).  [*See* Doc. No. 133, at p. 10 of 10].

- The black column equals $45,853.01.  This figure is derived from adding the fees that this Court, pursuant to the First Opinion, actually granted ($42,140.75) plus the expenses actually awarded ($3,712.26).  *King*, 546 B.R. at 736.

Set forth below are the calculations associated with the column entitled "Trustee:"

- The white column equals $28,715.43.  This number is derived from adding the fee that the Trustee has requested ($28,461.93) plus the expenses requested ($253.50).  [*See* Doc. No. 164, p. 2 of 13].

- The black column equals $5,804.27.  This figure is derived from adding the fees that this Court is actually granting ($5,692.39) plus the expenses actually being awarded ($111.88).

Set forth below are the calculations associated with the column entitled "Unsecured Creditors:"

- The white column equals $20,114.87.  This number represents what the unsecured creditors *would have received* if the Court granted both the Law Firm's fee application and the Fee Application in full.  First, $176,942.02 is the amount left for distribution to all those holding allowed claims. [Doc. No. 162, p. 22 of 30].  Then, $127,842.28 (i.e., the Law Firm's requested fees and expenses) is subtracted to equal $49,099.74.  Third, the Trustee's requested fees and expenses, $28,715.43, are subtracted—resulting in $20,384.31.  Fourth, the bank service fee is subtracted, leaving only $20,114.87 for the unsecured creditors. [*See id.* (stating that the service fee is $269.44)].

- The black column equals $125,015.30—a number not dissimilar to what the Law Firm originally requested in fees.  This number represents what the unsecured creditors *will actually receive* with the reductions in compensation from both the Law Firm and the Trustee.  This figure is derived by subtracting from the figure of $176,942.02 (the existing cash on hand in the estate) the following amounts: $45,853.01 (Law Firm's final award), $5,804.27 (Trustee's final award), and $269.44 (bank service fee).

# APPENDIX A

# APPENDIX A

Set forth below are the Findings of Fact from the First Opinion.  The specific findings that are cited in this Memorandum Opinion are set forth in italics.

## A.  Filing of the Chapter 7 Petition and Appointment of the Trustee

1.  On January 24, 2013, Raquel Tricia King (the "Debtor") filed a voluntary Chapter 7 petition. [Doc. No. 1].

2.  *On January 25, 2013, the Trustee was appointed in this case.  [See Doc. No. 8]. According to the resume that the Law Firm submitted when seeking approval to represent the Trustee, the Trustee has been practicing law in the State of Texas since 1976; has been serving as a bankruptcy trustee since 1976; has administered thousands of Chapter 7 cases; and is often hired by other lawyers to handle complex bankruptcy matters.  He is board-certified in business bankruptcy by the Texas Board of Legal Specialization and the American Board of Certification.  [Doc. No. 25, p. 17 of 19].*

## B.  Retention of Cage, Hill & Niehaus (i.e., the Law Firm) as Counsel for the Trustee

3.  On March 20, 2013, the Trustee filed his Application for Retention of Counsel for the Trustee (the "Original Application to Employ").  [Doc. No. 18].  The Original Application to Employ requested this Court to approve the Trustee's retention of his own law firm (Cage, Hill & Neihaus, LLP) to represent him in this case.

4.  *On April 15, 2013, the Trustee filed his Amended Application for Retention of Counsel for the Trustee (the "Amended Application to Employ"). [Doc. No. 25].  In the Amended Application to Employ, in footnote number 1, the Trustee made the following representation to the Court: "The initial review and assessment of claims filed in the*

*debtors' cases is routinely undertaken by the trustee or his paralegals and law clerks without incurring legal fees." [Id., p. 5].*

5. On April 24, 2013, this Court entered an order granting the Amended Application to Employ. [Doc. No. 30].

6. *On January 7, 2015, the Trustee filed his Second Amended Application for Retention of Counsel for the Trustee (the "Second Amended Application to Employ"). [Doc. No. 86]. The Trustee filed the Second Amended Application in order to obtain approval to add Sean Wilson as an additional attorney to provide services to the Trustee in this case. [Id., p. 12 of 14]. Once again, in the Second Amended Application to Employ, in footnote number 1, the Trustee made the following representation to the Court: "The initial review and assessment of claims filed in the debtors' cases is routinely undertaken by the trustee or his paralegals and law clerks without incurring legal fees." [Id., p. 5].*

7. On February 19, 2015, this Court entered an order approving the Second Amended Application to Employ. [Doc. No. 94].

## C. Liquidation of Assets of the Estate

8. *The Trustee has been able to recover approximately $191,000.00 for the estate. Approximately $179,000.00 was generated from the sale of certain real property located in Flatonia, Texas (the "Ranch"). [Doc. Nos. 116 & 120]. Approximately $8,000.00 was generated from the Debtor's turning over to the Trustee her tax refund. [Hr'g Tr. 36:19−20, Jan. 28, 2016]. Finally, another $4,000.00 was generated from the Debtor's payment for exempting certain personal assets (i.e., jewelry). [Hr'g Tr. 10:20−23; 36:20−21, Jan. 28, 2016].*

**D. The Trustee's Objection to Discharge**

9.  On June 21, 2013, the Law Firm, on behalf of the Trustee, filed a complaint objecting to the Debtor's discharge (the "Objection to Discharge"), thereby initiating Adversary Proceeding No. 13-03142. [Doc. No. 58]; [Adv. Proc. No. 13-03142, Adv. Doc. No. 1].

10. On July 2, 2014, after holding a trial on the Objection to Discharge, this Court entered a Judgment of Non-Dischargeability with respect to Adversary Proceeding No. 13-03142, wherein the Court denied the Debtor her discharge. [Doc. No. 85]; [Adv. Proc. No. 13-03142, Adv. Doc. No. 26].

11. Of the total fee figure of $123,282.25 requested in the Law Firm's Fee Application, $50,856.25 relates to legal services rendered for prosecution of the Objection to Discharge.

**E. The Trustee's Objection to the Debtor's Exemptions**

12. On July 17, 2013, the Law Firm, on behalf of the Trustee, filed its objection to the Debtor's claim of exemptions (the "Objection to Exemptions"). [Doc. No. 61].

13. On July 26, 2013, the Debtor filed a response to the Objection to Exemptions. [Doc. No. 62].

14. On October 23, 2013, this Court held a hearing on the Objection to Exemptions, and then continued this hearing to November 13, 2013.

15. On November 13, 2013, this Court held the continued hearing on the Objection to Exemptions wherein the Court heard testimony and admitted exhibits.

16. On December 2, 2013, this Court entered an Order on Trustee's Objection to Exemptions overruling the Trustee's Objection to Exemptions in its entirety. [Doc. No. 83].

17. Of the total fee figure of $123,282.25 requested in the Fee Application, $16,100.00 relates to legal services rendered for prosecution of the Objection to Exemptions.

**F. Western Surety's Complaint to Determine Dischargeability**

18. On June 21, 2013, Western Surety filed a complaint objecting to the dischargeability of the Debtor, thereby initiating Adversary Proceeding No. 13-03145. [Doc. No. 59]; [Adv. Proc. No. 13-03145, Adv. Doc. No. 1].

19. On October 17, 2014, Western Surety and the Debtor entered into an Agreed Final Judgment wherein the parties stipulated that $200,000.00 of the debt owed to Western Surety by the Debtor would be non-dischargeable. [Adv. Proc. No. 13-03145, Adv. Doc. No. 28].

# APPENDIX B

Case 14-36211   Document 74   Filed in TXSB on 08/17/16   Page 7 of 18

Exhibit A

# INDIVIDUAL ESTATE PROPERTY RECORD AND REPORT
## ASSET CASES

Page No: 5

**Case No.:** 14-36211-H4-7
**Case Name:** DO JONATHAN
**For the Period Ending:** 8/11/2016

**Trustee Name:** Rodney Tow
**Date Filed (f) or Converted (c):** 11/05/2014 (f)
**§341(a) Meeting Date:** 12/05/2014
**Claims Bar Date:** 02/17/2015

| | 1<br>Asset Description (Scheduled and Unscheduled (u) Property) | 2<br>Petition/ Unscheduled Value | 3<br>Estimated Net Value (Value Determined by Trustee, Less Liens, Exemptions and Other Costs) | 4<br>Property Abandoned OA=§554(a) abandon. | 5<br>Sale/Funds Received by the Estate | 6<br>Asset Fully Administered (FA)/ Gross Value of Remaining Assets |
|---|---|---|---|---|---|---|
| 12/05/2014 | RT 341 Notes—I advised the debtor to send rental payments to us.  Provide a copy of the leases--they will upload.   The payments on the properties are $400 to $450 and the rents are $800 and $900 so there is room.  We need to sell the houses and start collecting the rents. | | | | | |
| 12/04/2014 | This is an asset case.<br>RT 341 Review:<br><br>11709 Logan Ridge Drive Zillow says $133k<br>15238 Ensenada Drive Zillow $119k<br>8411 Elm Lake Drive Zillow $110<br><br>He needs to put all the exemption on the homestead and then I need to decide if it is worth selling it in addition to the two houses.<br><br>How does he exempt $20k on d1 and $10k on d5 plus other d5<br><br>Spouse shows to be self employed yet no business listed.  The schedules are incomplete. | | | | | |
| 12/02/2014 | What happened to Do Enterprise LLC and what did it do?  Why in Denton County?<br>N.O. Debtor owes tax returns for 2013 for $2,219, & 2012 for $1,200.They have some rental property .On the schedules they list checking bal.as $375.00 but the statements shows $2,821.36 on filing day. | | | | | |
| 12/02/2014 | Received tax returns for 2012 & 2013.bank statements & questionnaire.<br>JW-SENT A REQUEST TO COOPER & SCULLY TO GET EMPLOYED AND TO EMPLOY REALTOR | | | | | |
| 11/12/2014 | JW-I SENT A SECOND REQUEST TO DEBTOR'S ATTORNEY ASKING HOW THE DEBTOR CAME UP WITH THE VALUE OF THE REAL PROPERTY LISTED IN HIS SCHEDULES. | | | | | |

Exhibit A

**FORM 1**

**INDIVIDUAL ESTATE PROPERTY RECORD AND REPORT**

**ASSET CASES**

Page No: 5

| Case No.: | 11-34294-H4-7 | Trustee Name: | Rodney Tow |
| Case Name: | MARKS, DAVID | Date Filed (f) or Converted (c): | 05/17/2011 (f) |
| For the Period Ending: | 2/27/2014 | §341(a) Meeting Date: | 06/10/2011 |
| | | Claims Bar Date: | 10/31/2011 |

| 1 Asset Description (Scheduled and Unscheduled (u) Property) | 2 Petition/ Unscheduled Value | 3 Estimated Net Value (Value Determined by Trustee, Less Liens, Exemptions and Other Costs) | 4 Property Abandoned OA=§554(a) abandon. | 5 Sales/Funds Received by the Estate | 6 Asset Fully Administered (FA)/ Gross Value of Remaining Assets |
|---|---|---|---|---|---|

RT: Call from Sharon at the Voss law firm. 713-861-0015. Marks may have been a board member. Flood, wind and Fire. They represented on master agreement re wind. Flood policy-
-Michael West was hired for this. He may be an hourly attorney and the funds may have been used to pay West. Voss settled for $8 million. Lloyds may have also insured wind and
fire. They paid money out if they got all data. Still had about $1mm. Put it in the registry of the court. Settled in August 2012. Flood and fire settled before them. David Marks
received – he got $32,521.74 in August 2012. Check 1003. There is still land. He signed a release on August 17, 2012. Sharon has a copy of his driver's license. He still owns a portion
of the land–0.00632 interest in the land. Sharon said Marks signed a document that he signed a release saying he was the owner and estate of some sort.
RT: call to Sterling Minor. Left message.
JW- SUBPOENA SERVED ON THE VOSS LAW FIRM
JW-I WITHDREW MY TFR
JW-TRUSTEE FILED APPLICATION TO EMPLOY COOPER AND SCULLY.
JW-TRUSTEE FILED MOTION FOR SANCTIONS
JW-COOPER AND SCULLY FILED THEIR FINAL FEE APPLICATION
JW-COOPER AND SCULLY FILED AN AMENDED FEE APPLICATION.
JW-ORDER EMPLOYING COOPER AND SCULLY WAS APPROVED.
JW-COOPER AND SCULLY'S FEE APPLICATION WAS APPROVED.

| | | |
|---|---|---|
| Initial Projected Date Of Final Report (TFR): | 06/09/2013 | Current Projected Date Of Final Report (TFR): | 06/30/2014 |

/s/ RODNEY TOW

RODNEY TOW

Case 13-30207   Document 69   Filed in TXSB on 09/14/16   Page 8 of 13

FORM 1

INDIVIDUAL ESTATE PROPERTY RECORD AND REPORT

ASSET CASES

| Case No.: | 13-30207-H4-7 | | Trustee Name: | Rodney Tow |
| Case Name: | PHENOM ENERGY SUPPLY, LLC | | Date Filed (f) or Converted (c): | 01/17/2013 (f) |
| For the Period Ending: | 8/25/2016 | | §341(a) Meeting Date: | 02/22/2013 |
| | | | Claims Bar Date: | 06/10/2013 |

Page No:  2        Exhibit 8

| 1 | 2 | 3 | 4 | 5 | 6 |
|---|---|---|---|---|---|
| Asset Description (Scheduled and Unscheduled (u) Property) | Petition/ Unscheduled Values | Estimated Net Value (Value Determined by Trustee, Less Lien, Exemptions, and Other Costs) | Property Abandoned OA=§ 554(a) abandon. | Sale/Funds Received by the Estate | Asset Fully Administered (FA)/ Gross Value of Remaining Assets |

TOTALS (Excluding unknown value)        $224,854.62        $18,000.03        $17,000.00        Gross Value of Remaining Assets $0.00

**Major Activities affecting case closing:**

09/22/2015  JW-FILED REPORT OF SALE

09/22/2015  JW-RESUBMITTED MY TFR

12/20/2014  JW-SENT AN E-MAIL TO ACCOUNTANT ASKING HIM TO FILE HIS FINAL FEE APPLICATIONS.  I WILL SUBMIT MY TFR ON OR BEFORE 2/22/2015 UNLESS A CLAIM ISSUE ARISES.

01/15/2014  JW-COURT APPROVED TK'S FEE APPLICATION.

12/16/2013  JW-TK FILED FIRST FEE APPLICATION.

06/19/2013  JW-ORDER APPROVING AMENDED APPLICATION TO EMPLOY TK WAS ENTERED.

05/06/2013  JW-CREDITORS MEETING WAS HELD AND CONCLUDED.

05/03/2013  RT 341 Notes--asset case.  341 closed.  debtor did not need to appear.

04/15/2013  JW-THE TRUSTEE FILED AN AMENDED APPLICATION TO EMPLOY TK.

04/10/2013  JW-SPOKE WITH BOB BAKER WITH NEW HORIZONS TECHNOLOGIES.  HE HAS THE SERVER AND ALL BUT ONE OF THE COMPUTERS IN HIS POSSESSION.  HIS PHONE NUMBER 281-827-1734.

04/05/2013  JW-ORDER APPROVING ROSEN SYSTEMS AND ORDER APPROVING MOTION TO SELL WERE ENTERED.

04/01/2013  JW-AN AMENDED ORDER AUTHORIZING PAYMENT AND EMPLOYMENT OF ROSEN SYSTEM WAS FILED.

03/22/2013  Rt 341 Notes--Members wife Jeanna Simonetti.  Office equipment all leased--Baker Services now called New Horizon technologies.

What happened to phone system, where is it?

I want a list of the vendors and amounts paid.

Pipe is stored behind the building at son's yard.  Fenced with security.  Oil field pipe 2-3".  Whatever is on the inventory.

Continued to get complete data.  I may not need any further 341 meeting but cannot tell until I get my questions answered.

N.O.  Document Number:     17

Docket Text:

03/13/2013  Motion to Sell Personal Property Free and Clear of All Liens, Claims and Encumbrances Potentially at Auction. Objections/Request for Hearing Due in 21 days. Filed by Trustee Rodney D Tow (Attachments: # (1) Proposed Order) (Koenig, Julie)

Exhibit 8

**INDIVIDUAL ESTATE PROPERTY RECORD AND REPORT**
**ASSET CASES**

Page No:   3

| Case No.: | 13-30207-H4-7 | | | Trustee Name: | Rodney Tow |
| Case Name: | PHENOM ENERGY SUPPLY, LLC | | | Date Filed (f) or Converted (c): | 01/17/2013 (f) |
| For the Period Ending: | 8/25/2016 | | | §341(a) Meeting Date: | 02/22/2013 |
| | | | | Claims Bar Date: | 06/10/2013 |

| | 1 | 2 | 3 | 4 | 5 | 6 |
|---|---|---|---|---|---|---|
| | Asset Description (Scheduled and Unscheduled (u) Property) | Petition/ Unscheduled Values | Estimated Net Value (Value Determined by Trustee, Less Liens, Exemptions, and Other Costs) | Property Abandoned OA=§ 554(a) Abandon. | Sale/Funds Received by the Estate | Asset Fully Administered (FA)/ Gross Value of Remaining Assets |
| 03/13/2013 | N.O.  Document Number:   18 | | | | | |

Docket Text:

Application to Employ Rosen Systems, Inc. as Auctioneer. Objections/Request for Hearing Due in 7 days. Filed by Trustee Rodney D Tow (Attachments: # (1) Proposed Order) (Koenig, Julie)

03/08/2013   RT 341 Review--need an excel spreadsheet on the inventory.

03/08/2013   RT 341 Notes--debtor did not appear.  Marjorie sent Mark Solomon from her office.

I told Mark that I need an explanation regarding the missing inventory and equipment by March 15.

I asked to confirm if he had a second location still operating--confirm by March 15.

Reset to March 22 at 12:30. I will not agree to another reset.

02/21/2013   N.O.Received copies of bank statemnets for Oct.,Nov.,Dec., & Jan. all in Document Manger.

01/24/2013   N.O.  Document Number:   6

Docket Text:

Application to Employ Tow & Koenig, PLLC as General Counsel. Objections/Request for Hearing Due in 7 days. Filed by Trustee Rodney D Tow (Attachments: # (1) Proposed Order) (Tow, Rodne

| Initial Projected Date Of Final Report (TFR): | 02/22/2015 | Current Projected Date Of Final Report (TFR): | 02/22/2015 | /s/ RODNEY TOW |
| | | | | RODNEY TOW |

ROYCE HOMES-HOURLY                                                                                    Page    7

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 6/17/2009 - | JK | COMPARE LIST OF DOCS SENT BY DAVID JONES TO LETTERS FROM MYSELF & THE TRUSTEE; DRAFT SECOND LETTER TO DAVID REQUESTING THIS INFO AGAIN. SENT TO TRUSTEE FOR HIS APPROVAL BEFORE SENDING. | 1.60 375.00/hr | 600.00 |
| - | JK | MEETING WITH JASON, JEFF, TRUSTEE RE: ACTIONS TO TAKE IN THIS CASE. | 2.00 375.00/hr | 750.00 |
| - | JK | RESEARCH SWAMP LOT.COM FOR INFORMATION ON ROYCE HOMES, PRINT DOCS: RELATING TO SAME. | 2.30 375.00/hr | 862.50 |
| - | RT | CONFERENCE WITH JASON, JEFF AND JULIE RE: THE CASE | 2.50 350.00/hr | NO CHARGE |
| - | RT | REVIEW THE TAX RETURNS AND OTHER PDFS. | 0.34 350.00/hr | NO CHARGE |
| 6/18/2009 - | JK | REVIEW SEC. 542(E) (0.4), DRAFT MOTION TO COMPEL ERNST & YOUNG TO PRODUCE DOCUMENTS & ORDER (0.5) . DISCUSS WITH TRUSTEE RE: EMERGENCY OR REGULAR (0.2). | 1.10 425.00/hr | NO CHARGE |
| - | JK | DRAFT SUPOENA; BUSINESS RECORDS AFFIDAVIT & LETTER TO BDK. | 1.10 425.00/hr | NO CHARGE |
| 6/19/2009 - | JK | SPOKE WITH MARGARETTE HOSBACH RE: PRODUCTION FROM ERNST & YOUNG; SHE WILL CALL AT 9:30 AM TOMORROW TO DICUSS FURTHER. | 0.20 425.00/hr | NO CHARGE |
| - | JK | SPOKE TO MS. HOSBACH RE: DOCUMENT PRODUCTION- ERNST & YOUNG ONLY AUDITED 2006 AND DID NOT PREPARE ANY TAX RETURNS; SHE STATED THAT SHE HAD NEVER RECEIVED THIS TYPE OF SUPOENA BEFORE-ONLY IN CONNECTION WITH 2004 OR ADVERSARY; I GAVE HER HECTOR DURAN'S NUMBER TO VERIFY THAT THE TRUSTEE HAS THE RIGHT TO THE DOCUMENTS; SHE HAS AN ISSUE WITH REQUESTS FOR TIME RECORDS AND PERSONNEL FILES, REQUEST NOS 18 & 19 AND WE AGREED TO SET THAT ASIDE FOR NOW. | 0.50 425.00/hr | NO CHARGE |
| 6/22/2009 - | JK | MET WITH DAVID, JASON , JEFF & TRUSTEE RE: ROYCE HOMES, POTENTIAL CAUSES OF ACTION, DOCUMENTATION, ETC | 1.50 375.00/hr | 562.50 |
| 6/23/2009 - | RT | HEARINGS ON VARIOUS MOTIONS AND MEETINGS AFTERWARDS. | 2.00 350.00/hr | NO CHARGE |
| 6/24/2009 - | RDT | RESEARCH RELATING TO TRANSFER TO AMEGY. CALL WITH JASON TO DISCUSS. | 0.33 375.00/hr | NO CHARGE |
| - | JK | DRAFT LETTER TO DAVID JONES REQUESTING ADDITIONAL INFORMATION;CHECK SECRETARY OF STATE TO DETERMINE REGISTERED AGENT FOR HAMMERSMITH | 1.10 375.00/hr | 412.50 |

Exhibit B

ROYCE HOMES-HOURLY                                                                    Page    14

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 1/14/2010 - | JK | REVIEW E-MAIL FROM MARK BROOKS RE: MOTION TO SELL WATER & WASTEWATER FACILITY; REVISE MOTION & ORDER, DISCUSS EXHIBIT WITH TRUSTEE; SCANNED & COPIED EXHIBIT A; GAVE TO SHIRLEY FOR FILING | 1.60 375.00/hr | 600.00 |
| 1/20/2010 - | JK | DOWNLOAD & REVIEW MOTION FOR ADMINISTRATIVE CLAIM; REVIEW EXHIBIT A | 0.90 375.00/hr | 337.50 |
| 2/1/2010 - | RDT | CALL WITH PAT HAIR REGARDING THE APPEAL ON THE BOND CASE. | 0.34 375.00/hr | NO CHARGE |
| 2/2/2010 - | RDT | CALL FROM JOHN OSBURNE RE THEIR LITIGATION. THEY ARE ASKING TO LIFT THE STAY. I ASKED THAT HE PUT IN THE ORDER LIFTING STAY THAT THE BANKRUPTCY COURT HAS THE FINAL SAY ON THE JUDGMENT AGAINST ROYCE HOMES AND I ASKED THAT HE KEEPS ME INFORMED ON HIS LITIGATION. | 0.10 375.00/hr | NO CHARGE |
| 2/5/2010 - | JK | REVIEW 3 MOTIONS TO LIFT STAY AS TO INSURANCE PROCEEDS; REVIEW ATTACHED INSURANCE POLICIES; DISCUSS WITH TRUSTEE; E-MAILED MOVANT'S COUNSEL RE: SAME | 1.90 375.00/hr | 712.50 |
| 2/9/2010 - | JK | SPOKE TO LAURA BECKMAN HEDGES RE: NAME CHANGE FROM HAMMERSMITH, INC. TO HAMMERSMITH LLC & EFFECT ON LAWSUIT; PULL NAME CHANGE INFORMATION, SCAN & E-MAIL TO LAURA FOR HER REVIEW | 0.40 375.00/hr | 150.00 |
| 2/11/2010 - | JK | PULLED 362 MOTIONS FILED BY WOOLDRIDGE, MATULA & SANKEY; SPOKE TO JOSHUA LEAL RE: AGREED ORDER AS TO INSURANCE PROCEEDS ONLY & CLIENTS WITHDRAWING THEIR PROOFS OF CLAIM IN THE ESTATE; HE WILL DRAFT AGREED ORDERS AND SEND THEM TO ME BEFORE THE TUESDAY ANSWER DEADLINE; SPOKE TO LAURA BECKMAN HEDGES RE: INSURANCE COVERAGE ON THE MATULA CLAIM; SHE WILL SEND ENGAGEMENT LETTER FOR THE TRUSTEE TO REVIEW; PULLED CRAIG'S E-MAIL RE: LUICIANNI ORGANIZATION EARNEST MONEY WITH STEWART TITLE; RESEARCHED VICTOR DAVIS' CONTACT IINFORMATION AT STEWART TITLE; SPOKE TO HIS SECRETARY - HE WAS AT LUNCH; E-MAILED VICTOR RE: RELEASE OF THOSE FUNDS TO THE TRUSTEE; SPOKE TO ALAN GOLDSTEIN RE: CORRECTION DEED FOR OLSON & ALMAY - HE WILL SEND ORIGINAL & CORRECTION DEED FOR THE TRUSTEE'S REVIEW. | 1.10 375.00/hr | 412.50 |
| - | JK | REVIEWED E-MAIL FROM SANDY RE: LUCIANNI EARNEST MONEY; FORWARDED TO CRAIG FOR INFORMATION | 0.20 375.00/hr | 75.00 |

Exhibit B

# APPENDIX C

# APPENDIX C

The following includes the time entries submitted with the Law Firm's Fee Application that reference communications that attorneys at the Law Firm had with the Trustee. Only the attorneys billed time for these communications, which means that the Trustee viewed these activities as part of his duties administering the estate. The lumped entries are denoted with an asterisk (*).

1. **Phase ID B006**
   a. 02/13/2014 – TLW – 1.30 – *Meeting with JMH*, L. Greene, N. Hamren regarding case and potential settlement
   b. 05/12/2014 – TLW – 0.70 – Review of file regarding settlement issues, *conference with JMH regarding same*, email to L. Greene regarding settlement proposal*

2. **Phase ID B007**
   a. 01/17/2015 – TLW – 0.20 – *Conference with JMH regarding status of case*

3. **Phase ID B010 Recover Property of the Estate**
   a. 03/18/2013 – TLW – 1.60 – *Meeting with E. Boutte and JMH regarding claims and possible missing assets*, review of file regarding same*

   b. 07/29/2015 – TLW – 1.30 – *conference with JMH regarding Allen Boutte issues*, review of file, email to R. Sommers regarding additional information needed*

   c. 09/30/2015 – TLW – 0.40 – *Conference with JMH regarding Allen Boutte issues*, email to N. Hamren regarding same

4. **Phase ID B011 Sale of Assets**
   a. 01/28/2015 – RRN – 0.10 – *Conference with J. Hill re revised Listing Agreement for Lavaca County property*

   b. 07/13/2015 – RRN – 0.60 – *Conference with J. Hill re existing potential bidders for Lavaca County property and bidding procedures (.2)*; work on preparation of pro-forma earnest money contract for use in bidding. (.4)

   c. 07/15/2015 – RRN – 0.40 – Telephone conference with Randy Smith re revisions to pro-forma contract (.2) and conferences with Rick Scheurer re bidding and contract matters (.1); *conference with J. Hill re sales procedure (.1)*

   d. 08/20/2015 – RRN – 0.10 – Review of email from Buyers broker and of Amendment to contract; *conference with J. Hill*; forward amendment to E. engelhart [sic] for signature

   e. 08/24/2015 – RRN – 1.10 – Review of email request from title company (.1); work on gathering documents requested (.4); telephone conferences with Eva Englehart

(.2); *conferences with J. Hill re expenses advanced against the property (.1)*; prepare email to Ms. Engelhart re proposed treatment of sale proceeds; (.1); [sic] prepare closing instructions to title company (.2)

f.   09/04/2015 – RRN – 0.25 – Review of email massages [sic] re proposed assignment of the contract; *conference with J. Hill re that request and respond to broker*

g.   09/14/2015 – RRN – 1.10 – Telephone conference with R. Smith re problem with appraisal (.2); telephone conferences with title company representative re same problem (.1)(; [sic] telephone call to E. Engelhart (.1); work on revising Deed for changes in bank loan and closing date (.1); review of revised closing statements and ancillary documents (.2); compete closing package (.2); *conference with J. Hill re closing matters (.1)*; forward Seller's closing documents to title company (.1).

h.   02/04/2015 – TLW – 0.30 – Emails with D. Knabeschuh and *conference with JMH regarding terms of agreed order on Flatonia property*

i.   02/23/2015 – TLW – 0.30 – *Conference with JMH regarding ranch furnishings,* email to E. Engelhart regarding same

j.   07/06/2015 – TLW – 0.80 – Telephone conference with R. Smith, conference with R. Niehaus regarding terms of sale, *conference with JMH* and email to E. Engelhart regarding sale of Flatonia property*

5.   **Phase ID B012 Miscellaneous**
   a.   12/19/2013 – TLW – 0.60 – Review of claims, *conference with JMH regarding settlement terms**

[Doc. No. 133-4, Ex. C., p. 2–11 of 11].